## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Matt Richter, being duly sworn, do hereby state as follows:

**I.     INTRODUCTION**

1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since March of 2019. I graduated from the FBI Academy in Quantico, Virginia, where I received extensive training in the area of criminal investigations conducted by the FBI, including the investigations of financial crimes. I am currently assigned to the FBI Cleveland Division Headquarters and its White Collar Crimes Squad. I am empowered to make arrests for federal offenses. I am presently assigned to work a variety of criminal matters, including financial crimes, which include bank fraud, securities fraud, corporate fraud, mail fraud, wire fraud, money laundering, and other violations of Federal Law. Before becoming a Special Agent for the FBI, I was a Certified Public Accountant, working at General Electric for three years and Deloitte for three years.

2.     As a Special Agent, I am a Federal Law Enforcement Officer within the meaning of Rule 41(a) of the Federal Rules of Criminal Procedure: that is a government agent engaged in the enforcement of criminal laws of the United States and, thereby, authorized to request the issuance of federal search warrants. As a Special Agent, I have participated in complex financial investigations. I have participated in the execution of arrest warrants.

3.     The statements contained in this Affidavit are based upon, among other things, the information provided by witnesses, public records, and my experience and training. Unless otherwise indicated, all conversations and statements described in this Affidavit are related in substance and part. This Affidavit is intended only to establish sufficient probable cause for the

requested criminal complaint and arrest warrant and therefore does not set forth all of my knowledge about this matter.

4. This Affidavit is made in support of an application for a criminal complaint and an arrest warrant for JAMIE KIDD-DUNBAR for violations of Title 18, United States Code, Sections 1343 (Wire Fraud).

## II. THE INVESTIGATION

5. The investigation revealed that KIDD-DUNBAR, the Home Health Aide of VICTIM-1, devised a scheme to defraud VICTIM-1 and VICTIM-1's aunt, VICTIM-2 out of $347,000.00 from their bank accounts. VICTIM-1 is a resident of Elyria, Ohio. VICTIM-1 has suffered multiple strokes, is legally blind, and confined to a wheelchair. DUNBAR became the Home Health Aide for VICTIM-1 in March of 2016. DUNBAR had access to VICTIM-1's Huntington Bank debit card for the sole purpose of purchasing groceries and other necessities on VICTIM-1's behalf. VICTIM-1 and DUNBAR were the only individuals who had access to this card.

6. VICTIM-1 contacted the Elyria Police Department ("EPD") on June 25, 2019, because she suspected DUNBAR had made unauthorized transactions on VICTIM-1's Huntington Bank debit card. VICTIM-1 provided copies of her Huntington Bank statements to the EPD from November 2018 to June 2019. VICTIM-1 indicated unauthorized transactions on these bank statements totaling $97,614.94 for this period. The transactions, among others, included purchases at retailers, including but not limited to Macy's, Wal-Mart, Flingers Market, Aldi, Lowes, Midview Local Schools, North Ridgeville Animal Clinic, Rent-A-Center, Metro PCS, Olive Garden, Red Lobster, ATM withdrawals, and other transfers. VICTIM-1 also

suspected DUNBAR had unauthorized transactions related to her aunt, VICTIM-2. DUNBAR was also a Home Health Aide for VICTIM-2. VICTIM-2 passed away in 2017.

7. One category of unauthorized transactions was noted as "Discover Phone Pay" on the Huntington Bank statements. "Discover Phone Pay" is an option to pay off a Discover Bank Credit Card. VICTIM-1 did not have an account with Discover Bank, nor did she make any payments to Discover Bank. The "Discover Phone Pay" amounts and dates matched to payments made on VICTIM-2's Discover Credit Card. The charges made on VICTIM-2's Discover Credit Card were after VICTIM-2's death.

8. VICTIM-1 identified fraudulent ATM withdrawals on her Huntington Bank Statements. Surveillance footage of four of these withdrawals matches the description of DUNBAR.

9. Through the review of information provided by retailers, other fraudulent charges made to Rent-A-Center, Midview Local Schools, First Energy Corp., TruGreen Lawn Care, and AT&T were all made by DUNBAR. EPD obtained a copy of the Rent-A-Center customer contract related to the fraudulent purchases. The contract agreement was for a customer named Jamie Dunbar at the address 1316 New Mexico Ave, Lorain, Ohio, which is a known address of DUNBAR. EPD also spoke to the Treasurer of Midview Local Schools, who confirmed that the charges were made on an account for DUNBAR. EPD obtained returned subpoenas from First Energy Corp., which showed the charges were under account CHARLES DUNBAR, the husband of DUNBAR, at address 12314 Alton Drive, Grafton, Ohio, 44044, which is the residences the DUNBAR's purchased in August of 2018. EPD also received subpoena responses from TruGreen Lawn Care and AT&T, which showed charges were related to a customer account belonging to DUNBAR. Other purchases VICTIM-1 claimed she would never make,

3

including but not limited to auto loan payments, Kay Jewelers, Elyria Liquor, and Wal-Mart purchases.

10.     On August 20, 2019, Elyria Police Detectives arrested DUNBAR for Theft (F-4) and Misuse of Credit Cards (F-4) charges. Atfer the arrest, Elyria Police Detectives conducted a recorded interview of DUNBAR. DUNBAR confessed to using VICTIM-1 and VICTIM-2's debit and credit cards to make unauthorized transactions. DUNBAR stated that VICTIM-2 passed away in November of 2017, and DUNBAR began using her Discover credit card in January of 2018. DUNBAR reviewed the list of unauthorized transactions noted by VICTIM-1 for the period of November 2018 to June 2019 for a total of $97,614.94 and admitted to committing the purchases and transactions.

11.     On August 28, 2019, VICTIM-1 notified Elyria Police Detectives that her same Huntington Bank debit card had unauthorized charges since January of 2018. The total amount of unauthorized transactions for the period of January 2018 to October 2018 was $249,618.04, bringing the total charges to 347,232.50. Many of these charges were to the same vendors as those DUNBAR admitted to using from November 2018 to June of 2019, including Rent-A-Center, Dish Network, North Ridgeville Animal Clinic, Metro PCS, "Discover Phone Pay," First Energy Corp., and auto loan payments.

12.     For the purpose of executing and attempting to execute the scheme and artifice to defraud described above, KIDD-DUNBAR transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, to wit: KIDD-DUNBAR made payments via "Discover Phone Pay" that crossed state lines.

## II. CONCLUSION

13. Based upon the totality of the facts and circumstances set forth herein, and based upon my training and experience, there is probable cause to believe that JAMIE KIDD-DUNBAR committed violations of Title 18, United States Code, Section 1343 (Wire Fraud). Accordingly, I respectfully request that the Court issue a warrant authorizing the arrest of JAMIE KIDD-DUNBAR.

_____
Matt Richter, Special Agent
Federal Bureau of Investigation

Sworn to via telephone after
submission by reliable electronic
means. Crim.Rules. 4.1; 41(d)(3)



Thomas M. Parker
United States Magistrate Judge
**2:28 PM, Jan 9, 2020**